The next case to be called this afternoon is People v. Lloyd Merkley, 512-0547. Mr. Whitney. Thank you. Good afternoon, Your Honors, and may I please report, Counsel? On this appeal, we are asking the Court to vacate Mr. Merkley's plea of guilty, conviction, and sentence, and allow him to plea anew, because this Court can have no confidence whatsoever that his plea was truly intelligent, knowing, and voluntary. We're presented in this case with a case of not only cumulative error, but what might be called synergistic error, in other words, where one set of errors compounded or amplified the effects of others. The Court below in this case was presented with numerous serious red flags, indicating that Mr. Merkley was mentally and emotionally disturbed, mentally challenged, on an unknown regimen of drugs, and, unless one is prepared to accept as real his far-fetched claims of death threats by family members, communicated by high-ranking military officers at Fort Leavenworth, his son being hired as a bounty hunter to kill his wife, he was plainly paranoid and delusional. Yet the Court below refused to even have him evaluated to determine if he was mentally fit to stand trial or plea. That disturbing failure was compounded by the Court's failure to properly provide Mr. Merkley with the crucial admonitions, inquiries, and full disclosure of consequences under Rule 402 that it had a constitutional duty to provide to any defendant, let alone one in a compromised mental state. Thus, to illustrate what I mean by compounded error, a defendant who perceived serious threats that coerced him into pleading guilty was never asked if anyone had threatened him to get him to plead guilty before the guilty plea was accepted. Then later, when he raised the issue of the perceived threats, some of which were pretty outlandish, the Court still denied his motion to withdraw his guilty plea and still ignored new warning signs that he was never fit to plead guilty in the first place. That, in a nutshell, is what transpired in this case. That's the overview. Regarding the specific errors, I think first and foremost is the fact that the trial court erred in failing to have Mr. Merkley evaluated to determine whether a bona fide doubt existed as to his fitness to stand trial or plead. And as we argued in the brief, the Court below applied the wrong standard. It applied the standard from Section 104.11a in deciding whether he was qualified to be evaluated under Section b. And that this was error supported both by the text of the statute itself as well as the legislative history to a degree. The text of 104.11b says that upon request of the defendant that a qualified expert be appointed to examine him or her to determine prior to trial if, the word if is in there, if a bona fide doubt as to his or her fitness to stand trial may be raised, the Court in its discretion may award an examination. Well, the trial court turned this on its head in denying the motion to have Mr. Merkley evaluated and saying, well, I don't see a bona fide doubt as to his fitness, therefore we're not going to have him evaluated. This is a classic case of putting the cart before the horse. The whole point of 11b, or the major point of 11b, is that it's to determine if there's a bona fide doubt. So in turning that around and saying, well, you didn't meet the standard for 11b because I don't see a bona fide doubt, the Court was plainly turning the statute on its head. And now this is, there is no, there's very little case law on 11b at all, and there's none on this particular issue. But number one, as I just pointed out, plain reading of the statute indicates that it's an if. That's the whole purpose of 11b. If you were determined, in order to help determine if there's a bona fide doubt, you have someone evaluate it. I would suggest that very likely the explanation, while we don't see very much case law on 11b, is because the vast majority of trial courts understand this as a low threshold in order to exercise appropriate caution. If there's any reason to think that maybe this person's not fit, go ahead and have the evaluation done. And I think that is the clear purpose. And in the legislative history, this does support it. There's not a lot of legislative history, but I do cite in the opening brief the report of the commentary of Representative Daniels in what was Senate Bill 133, quote, the bill provides for a preliminary fitness exam and then a full exam if he is found unfit in the preliminary exam. Twice using the word preliminary, indicating that this is to serve a preliminary precautionary purpose. And I analogize in the brief, similar to the distinction between finding probable cause at a preliminary hearing and the standard of proof that must be met by the State at a full-blown trial, there's a very low threshold in the preliminary step. In fact, the case law doesn't even, it's not even a preponderance of the evidence test. Just basically show us some probable cause here. It's not even a burden of proof. I would suggest in this case 11b is somewhat comparable to that. It doesn't need to be stated a burden of proof. It should be an exercise of common sense. If you have some reasonable indicia that this person may be troubled, may not be fit to stand trial or plead, which is key in this case, then you err on the side of caution and have them evaluated. Now, if the court in its discretion had decided to not allow a qualified expert point to examine him, but did not use the word bona fide doubt, would you still be here? Because he does have, he or she has discretion, it says so in the statute, correct? The court does have discretion, yes, to appoint or not appoint. But again, the question here is it clearly, by the nature of how the court ruled, it indicated it was applying the wrong standard. It was basically saying I'm not going to appoint an expert because I don't see a bona fide doubt. That's not the standard. You don't have to find a bona fide doubt before you order the evaluation. You have to have some reason, but there was reason aplenty in this case. And, you know, this is a case where there was an awful lot of smoke. And at a certain point, you have to think, gee, if there's a lot of smoke, shouldn't there be a fire? But in this case, we're not even asking the court to find out if there was enough smoke to investigate whether there was a fire. That's really the question presented in this case. And there was plenty of it. Every single time, every hearing in this case, when Mr. Merkley appeared, there were indicators that he was having trouble understanding, that he was self-absorbed in his emotional problems, that he was worried about his wife being in a safe house, a term he used numerous times. And then in the motion itself brought by his defense counsel, Otter, the attorney communicated, sometimes he gives me answers that don't make any sense. Sometimes he says things that just don't track. Other times he seems lucid, but sometimes, you know, he's not responding correctly. And then you have, it was brought to the court's attention that he was a veteran, diagnosed with PTSD, 100 percent disabled, and he was on some type of drugs, but nobody, neither defense counsel nor the court, ever took another step. If they had had him evaluated, they would have at least found out what the drugs were. They don't know if they were psychotropic or not. We're operating in a vacuum here because of the failure to have him evaluated, and that's one of the reasons why I'm arguing here. We have, we cannot possibly have any confidence that this was an intelligent and voluntary guilty plea as a result of that. Do you think we should send it back merely because the court didn't understand its discretion, in that it perhaps thought that it had to make the determination? Yes. Do you want to find out? That's not the only reason why this court could send it back, but that would certainly be one, because it applied the wrong legal standard. Therefore, and I think your review on this is noble for that reason, that there is a legal question here. Ordinarily, it's abuse of discretion, but because there is a legal question that was raised by how the court ruled and what is the correct legal standard, and I think this is a case of first impression and how you interpret 11B, that I think that that would be the grounds that, one of the grounds by which the conviction should be reversed, and Mr. Merkley allowed to plead again. Thank you. Do you have an opportunity for rebuttal? Mr. Norris for the statement of the line. Mr. Norris. He's the court counsel. What we just heard is very, very similar to what is in the initial stages of the defendant's brief, and that is that the trial court misconstrued the statute. I just don't think there's any evidence of that at all. What happened at the trial level is that when a defendant's counsel made a motion for an examination by a psychologist, he didn't make just a simple motion of that kind. It was a complex motion, and it included an examination for insanity and several other items there. And when it came time to argue the defendant's motion, the argument was cast, and this is a matter of record. All you have to do is look at the record. The argument was cast in terms of whether or not there was a bona fide doubt of fitness. The determination that there was a bona fide doubt of fitness would lead necessarily not to an examination by an expert to determine whether there was a bona fide doubt, but it would lead to a full stage fitness hearing. That was the way that the argument was presented in the motion. The defendant claimed in the motion itself that there was a bona fide doubt of the defendant's fitness. The defendant claimed at the hearing on that motion that there was a bona fide doubt of the defendant's fitness. And the entire argument that was made on that motion before Judge Loewe centered around whether or not there was a bona fide doubt. Yes, he did ask for an appointment of a psychologist, but when that argument actually transpired, the issue raised by the defendant was that there was a bona fide doubt. And the state responded to those arguments. How can you have a hearing on a bona fide doubt if there's no expert to talk about it? That's a good question. The way the hearing was staged and the way it was conducted and the way it was argued followed the way the defendant presented it. Well, regardless of who presented what without an expert, there may be experts. It doesn't seem to me you can have a fair hearing. The hearing was not about whether or not there was a bona fide doubt. The trial judge did not rule that there was a bona fide doubt. I thought that's what you were just arguing, that the hearing was whether or not there was a bona fide doubt. That argument is a counter argument to the defendant's claim that the court below misconstrued what that hearing was supposed to be about. If the hearing was as you described, where people were talking about whether Mr. Merkley had, or whether the court had a bona fide doubt about Mr. Merkley, then indeed he may have misconstrued it. It seems to me that based upon everything in the record that he's got PTSD, he's got psychotropic medications. He clearly has inappropriate responses to the trial court and on and on. Doesn't it raise a question in your mind as to whether or not the defendant should be examined? Not necessarily. The state addressed all of those issues with case secretaries in the course of that hearing. The fact that the defendant has a mental history does not necessarily generate the conclusion that he's unfit for trial, because the question of fitness for trial is a question about whether or not he is able to assist his attorney and understand the proceedings. There is a legion of evidence through the examinations that were of him by two judges, Judge Lobey and then later by Judge Schwarm. The judges examined him? They examined him verbally in order to determine. No, they didn't examine him as a psychologist. I know Justice Schwarm, and I don't think he has a psychiatry degree. No, I did not say that, and I certainly didn't say that in the brief. But at the hearing, toward the end of the hearing, Justice Judge Lobey asked the defendants some very pointed questions about whether he understood the penalties, whether he understood the nature of the offense, and whether he knew that he had a choice of pleading guilty or not guilty. In other words, there was a run-through of the T402 admonishments early on at the end of that hearing on the question of whether or not there was grounds to proceed to a fitness hearing. And that's the way that hearing was conducted. It was conducted as if the defendant were arguing that he should proceed, that the court should proceed to a fitness hearing. Because the argument was that there was a bona fide doubt. And that's exactly what you have argued, that there was a bona fide doubt. And what the defense is arguing is there's a step before that, right? They're arguing that you put the cart before the horse, in other words. It's not a necessary step. I agree with you. Not a necessary step, but there is a step. There is a step that can be taken at the discretion of the trial court. And that step is the appointment of an expert to make a preliminary determination of whether or not there was a bona fide, or to help the court determine whether or not there was a bona fide doubt of fitness. I think there was a word agreed on that. Well, how do we understand, then, the difference between A and B? When you read A, and the preliminary language for all of the ABC is raising issues of burden fitness motions, then it goes on to say, when a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further. That's correct. Okay. Isn't that a mandatory? Yes, it is a mandatory. The question is, did we ever get to that point? The whole issue, the argument that transpired, that in fact transpired, let me just break this down, okay? The subsection B provides that the court has discretion to appoint an expert to help to assist the parties in determining whether or not there's a bona fide doubt of fitness. If that were done, and there was a determination that there was a bona fide doubt, we'd go to a fitness hearing. Okay, I'm confused. What is the order, the determination that's supposed to be made under A, then? A requires, if there is a bona fide doubt. Raised. Raised. The court shall, and I imagine it's raised by a motion. No, it isn't. The court shall order a determination of the issue before proceeding further. Right. Ennis, I understand that you all were arguing about whether there was a bona fide doubt, so you didn't get to this. We didn't get to that stage. Shall. We didn't get to that stage. That's right. But the reason you couldn't get there is because no expert had been appointed. Because the court decided whether or not it was bona fide. Well, the expert, whether or not to appoint an expert is a determination made by the court in its discretion. There has been no argument by the defendant that the court abused its discretion in this case. There has been a lot of confusion laid out here primarily by the defendant, and he did so in his brief as well. He did not attack this proceeding on the grounds that the trial court abused its discretion in not appointing an expert. He attacked this proceeding on the grounds that the trial court was confused between the two provisions, between A and B, and, therefore, proceeded in the wrong way. The State's response to that is that if there was any confusion, it was laid out there by the way the defendant approached this issue. The defendant approached this issue not as an issue having to do with whether or not to appoint an expert, although he did mouth those words at a couple of occasions in his argument, but the argument that the defendant pressed at the hearing and the argument that the State responded to at the hearing since the defendant had pressed it was not an argument that was aimed at good reasons for appointing an expert at that stage, a discretionary appointment of an expert, but the argument that was made was an argument to the effect that there was a bona fide doubt of fitness, and the defendant criticizes the court for proceeding in that matter on the grounds that the court misconstrued the distinction between A and B. And all we're saying is that's not true. We were at B, at subsection B. I'm sorry, we should have been just at subsection B. If there was any confusion made, it was the way the defendant presented that argument. Well, Mr. Norris, I have one further question, and I may be the one that's totally confused, but what does it mean under A where it says the court shall order a determination of the issue? What process would that be? A fitness hearing. A fitness hearing. That's not the way this was approached. It's not the way the defendant approached it. But it's also under the title of raising issues. Yes. The defendant has indeed put confusion into this issue by attempting to- Well, I've heard you say that a lot. I don't think, at least from my reading of it, I don't see the confusion that you keep repeating. But I do have one question for you. And I used to ask this question when I was in private practice as it relates to B. And you're asking the court to appoint someone to see whether an individual has a bona fide doubt as to fitness. Well, you've got a guy who answers inappropriately. He's on psychotropic drugs. He's got PTSD from the war. I always used to say to the judge when I'm asking you this, why not? What's the big deal? Why not? Don't you want to be sure? I don't think I can answer that question as it's put, to be perfectly frank. I mean, what more do you need to reach the threshold level of- The question. Having someone appointed. The question is whether we reach the threshold level on those grounds. Now, there is case law, which I cited in the brief in which the assistant state's attorney cited at that hearing, to the effect that the fact that the defendant has grappled with mental illness does not make it the case that there is a bona fide doubt in his fitness. Well, he's either delusional or faking it. I mean, obviously, we haven't read the whole record, at least I haven't. A lot of his statements were totally irrational, sounded paranoid, definitely not in touch with reality, or he was faking it, delusional. Which statements, if I may ask? That people were controlling his family members, that people from higher ups from one of the forts was- Those, yeah. I mean, there were a number of things that were not rational. Those statements referred to purported threats that were made by, I believe it was his son who was in the military. And those threats, first of all, were reported by him very early on and not at all close to when he pleaded guilty. And it's not clear what to make of them. They were made from a distance. No, that's true. They were made from a distance. They exist only per the defendant's statement that they exist. Exactly. But, I mean, they don't- they're nonsensical, and his threats of suicide were apparently many threats of suicide. Now, whether or not those were genuine or not- I'm not sure that they're even credible. Well, I don't know that anybody had any expertise to determine that. I would say on their face. Excuse me? The Department of Corrections- On their face? If he goes to prison, the Department of Corrections is not going to let him commit suicide. So how is he- People hang themselves all the time in jails. I mean, we're well aware of that. I'm just saying that the judge, unless he's got a psychiatry degree, as Justice Cates was saying, he doesn't have the expertise to make those determinations. You're saying a statement that the Criminal Investigation Division of Fort Leavenworth has been hassling him, his son is a bounty hunter going after his wife, and his attorney says he's not tracking everything. This is two ships passing in the night, often in our discussions, doesn't raise a bona fide doubt? Not necessarily, because the question of insanity and the question of bona fide doubt of fitness are entirely separate. I agree with that. Okay. But it doesn't raise a bona fide doubt. And so, I mean, that's what- that's partly what's at issue here, and that's partly what was at issue at that meeting. If you look at the legal discussion, if you look at the legal arguments that were made by the parties at that hearing, the state argues repeatedly with substantial case law behind it that the fact that he has this history of mental illness, the fact that he is, if you pardon the expression, a little off, does not amount under the law to a showing that there is a bona fide doubt of his fitness to go to trial. Or to plead. Because the question of whether or not there is a bona fide doubt to his fitness is related necessarily to the question, ultimate question, of whether he's fit to go to trial or to plead. And that his being fit to go to trial or plead or not being fit is not a matter of his past mental illness or even a matter of his present mental illness. It's a matter of whether or not he has the wits to aid in his defense and communicate with counsel. There was never any showing that there was any doubt about that. The fact of showing on the record is entirely to the contrary. You're saying that his attorney's position that sometimes this guy's tracking, sometimes he isn't, and would not tip the scale in that regard? I don't think so. You don't think so? Okay. Because first of all, if counsel's proclamation, the defendant is not fit or there's a bona fide doubt, does not by itself carry any weight. I'm not saying by itself. I'm saying given all of the statements in court, given the history, given everything else, wouldn't that tip the scale as far as the explicit issue of fitness? Not mental illness, but fitness. I don't think it tips the scales under the case law that was cited in the statement below. Okay. All right. Thank you. Let's give Mr. Whitney an opportunity here to speak to us. Thank you, Your Honors. First of all, with respect to the issue of confusion, I would submit that the record plainly shows we didn't introduce any confusion. The record shows that the trial court judge was confused about the proper legal standard. But as far as how it was argued, I would urge the court, first of all, simply look at the motion that was filed. The motion plainly requested appointment of an expert psychiatrist or psychologist to have Mr. Berkley evaluated. It did not request a motion hearing under 11A. The opposing counsel has made a lot about how the motion was captioned, but I would submit to you that we cannot deny someone's due process rights based on an inartfully drafted caption to the motion. We look at the substance of the motion, of course, and we're not going to be bound by something like a case caption. As far as the argument and whether it was cast as an 11A hearing or so on, I would say that apparently the prosecutor may have thought that was what was going on at some point, and there was some confusion for that reason. But as far as what defense counsel was asking for, it was clearly geared toward getting the evaluation. And the court itself even ultimately ruled that I'm going to deny the request for an evaluation because I'm not convinced there is a bona fide or bona fide doubt as to his fitness. The court still understood it ultimately that way, but it applied the wrong legal standard. I think the record clearly bears that out. As far as the questioning by Judge Lawley and Judge Schwarm, there was some questioning to see if Mr. Merkley understood the legal processes, you know, what is a trial, what happens at a trial, that sort of thing. But that is not dispositive. And I cite a case in our brief, the Shorack case, people be Shorack out of the Second District, where there was a reversal because even though the defendant did have a passable understanding of the legal process, he was still delusional. And therefore, he still couldn't communicate effectively with his attorney and prepare for his defense simply because in the abstract you know what a trial is and you have an idea of what's going on in the courtroom. It doesn't mean you're not crazy. It doesn't mean you're fit to the point that you're not fit or fit to be able to assist in your defense and make an intelligent, knowing, and voluntary decision if you decide to plead guilty, which is what we're doing here. We also haven't even gotten into the 402 admonitions that were omitted, including the important one about whether he received any threats. And I would point out in this regard that, yeah, there was this – at the motion to withdraw the guilty plea hearing, there was this testimony about his wife being in a safe house and his son, Stevie, going bounty hunting. And it was the criminal investigations divisions at Fort Leavenworth who told him about the death threats from his son he was going to come get him and that sort of thing. Well, I would point out that the court basically had two choices. If he really believed those threats were real, then the guilty plea should have been allowed to withdraw on the fact that there were real threats. But if the court understood that they were not real, then that, once again, it's being – it's right in the face of the court that, gee, this guy has some issues here. He's not delusional. He's not paranoid. Maybe, sua sponte, we should revisit this whole question about having him evaluated based on this new information. And some of it was new at that time. Not all of it, but some of it was. So – and the court does have a continuing duty to reevaluate in the face of new indicia like this. I cite the Drove v. Missouri case from the United States Supreme Court where someone was found fit to stand trial eight months earlier, but then when there were new indicia that arose at the trial, the Supreme Court said, you know what? The court has a continuing duty to raise that question on its own if it's seeing these new red flags going up, and there were plenty of red flags in this case. So for all of these reasons, not just all the red flags, not just the wrong legal standard, but on top of that, the failure to give Mr. Merkley all of the Rule 402 admonitions, including the crucial one about his right to continue to persist in his plea of not guilty? The failure to inquire, did anybody make any threats, which if the court had asked, that might have saved a lot of trouble. For all of these reasons taken together, we urge this Court to please allow – to reverse the conviction and allow Mr. Merkley to plead guilty. Thank you. Thank you. Thank you both. Okay, the case will be taken under advisement and a disposition issued in due course. And that completes our document. Court adjourned. All rise.